J-S12008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                       :          PENNSYLVANIA
                                       :

          v.                         :
                                       :
                                     :

GARY DAVIS                      :
                                     :

           Appellant         :     No. 608 EDA 2021

Appeal from the PCRA Order Entered March 9, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002634-2013

BEFORE:  BENDER, P.J.E., BOWES, J., and DUBOW, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED JULY 8, 2022**

Appellant, Gary Davis, appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

Appellant's convictions stemmed from the events of December 8, 2012, at the Easy Corner Bar in Philadelphia, where Appellant was caught on video fatally shooting the victim, Irving Vaughn.  As summarized by Appellant,

> [i]t was not disputed that Appellant shot and killed the decedent at trial.  Instead, Appellant asserted that he acted in self-defense, and portions of the incident were captured by the bar's video surveillance. … In sum, Philadelphia Police responded to a shooting at the Easy Corner Bar in Philadelphia on December 8, 2012.  When police arrived, they found the decedent suffering from gunshot wounds to the neck, torso, and finger.  They also obtained a video from the bar's manager which showed much of the incident.
>
> The video showed Appellant entering the bathroom of the bar.  The decedent, seemingly guided by Appellant's female cousin, walked into the bathroom to have a conversation with Appellant.

> The cousin did not believe that there was any tension or issue between Appellant and the decedent. The video did not show what happened in the bathroom, but eventually, the door to the bathroom flew open. It was then possible to see Appellant and the decedent struggling over a firearm. Appellant eventually shot the decedent, put a gun in his waistband, and left the bar. Appellant testified that he acted in self-defense and had shot the decedent with a gun that Appellant wrestled away from the decedent. He testified that he did not start the fight and that he thought the two men were just going to have a conversation. No witnesses testified to the contrary.

Appellant's Brief at x-xi. A thorough review of the facts adduced at trial was provided by the trial court during the litigation of Appellant's direct appeal. *See* Trial Court Opinion, 3/4/16, at 2–21.

Following a bifurcated jury/nonjury trial held in early 2015, Appellant was convicted of third-degree murder, reckless endangerment, possessing an instrument of crime, and two firearm violations.[1] On August 18, 2015, the trial court sentenced Appellant to an aggregate term of 30-60 years' incarceration. After Appellant's post-sentence motion was denied by operation of law, he filed a timely notice of appeal. This Court affirmed Appellant's judgment of sentence. *Commonwealth v. Davis*, 159 A.3d 48 (Pa. Super. 2016) (unpublished memorandum). Appellant did not seek further review with our Supreme Court.

---

[1] A jury convicted Appellant of all these crimes, but for one of the firearm violations, on February 23, 2015. "On that same day, [Appellant] executed a valid waiver of his right to a jury trial and [the trial court] found him guilty" of the remaining firearm offense. PCRA Court Opinion ("PCO"), 6/29/21, at 1.

Appellant filed, *pro se*, the at-issue PCRA petition on July 25, 2017, and appointed counsel filed amended PCRA petitions on Appellant's behalf on February 27, 2019, and November 26, 2019 (collectively "the petition"). On January 21, 2021, pursuant to Pa.R.Crim.P. 907, the PCRA court issued notice of its intent to dismiss the petition without a hearing. On March 10, 2021, the court dismissed the petition.

Appellant filed a timely notice of appeal on March 29, 2021. He then filed a Pa.R.A.P. 1925(b) statement on May 26, 2021, although the PCRA court did not order him to do so. The court issued its Rule 1925(a) opinion on June 29, 2021.

Appellant now presents the following questions for our review:

I. Whether the PCRA court erred in denying [the petition] without an evidentiary hearing where trial counsel and appellate counsel failed to properly challenge the prosecutor's opening statement assertion that Appellant had the face of a murderer?

II. Whether the PCRA court erred in denying [the petition] without an evidentiary hearing where trial and appellate counsel were ineffective in failing to challenge the trial court's decision to admit the surprise testimony of the surrogate assistant medical examiner that the decedent was shot from behind instead of from the front where that testimony was beyond the scope of the expert report?

III. Whether the PCRA [c]ourt should have held an evidentiary hearing on the assertion that Appellant's biographical report had been altered to suggest that he was taller than he really is, thereby improperly weakening his clam of self-defense?

Appellant's Brief at vii.

This Court reviews

an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

**Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

Here, the record does not include a PCRA hearing, because the PCRA court declined to hold one. In these circumstances, we note that

the right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

**Commonwealth v. Khalifah**, 852 A.2d 1238, 1239–40 (Pa. Super. 2004) (citations omitted).

In his first two claims, Appellant asserts that his prior attorneys provided ineffective assistance of counsel ("IAC"). In reviewing IAC claims, we

begin with the presumption that counsel rendered effective assistance. To obtain relief on a claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. **Strickland v. Washington**,

- 4 -

466 U.S. 668, 687–91 (1984). In our Commonwealth, we have rearticulated the **Strickland** Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987).

**Commonwealth v. Dennis**, 17 A.3d 297, 301 (Pa. 2011) (citations reformatted, some internal citations omitted).

# I

Appellant first claims that his trial and/or direct-appeal attorney failed to properly challenge a statement made during the Commonwealth's opening regarding Appellant's appearance. During that opening statement, the prosecutor told the jury:

> I sometimes wonder in my job, and this is maybe like an occupational hazard, but I think about murder a lot. It's what I do. I think about it a lot, probably not very healthy. I think about when a person commits murder, when a person takes life from another violently, I wonder to myself—
>
> [At this point, the trial court overrules defense counsel's brief objection to "what the Commonwealth wonders" as not being "appropriate" for an opening statement.]
>
> I wonder what is the look on the person's face, because I don't know. I have an idea from movies, TV, but I don't know. What is a look of a person who rips life from another? Is it disbelief? Is it panic? Is it fear? Is it horror?
>
> Well, if for some reason any of you have ever thought or wondered about that moment, you have come to the right place because [Appellant] is on tape. Yeah, it's on tape.
>
> You will see [Appellant]'s face, his face the moment he murdered Irving Vaughn, shooting him four times. Folks, it's cold. There's no panic. There's no fear. It's ice. [Appellant] stood over Irving

Vaughn's lifeless body, tucking that gun under his sweater with ice in his veins, no emotion. And he walked off, sauntered off out of that bar. It's on video.

N.T. Trial, 2/10/15, at 54-55. Appellant's trial counsel did not make any further objection to these remarks.

Appellant argues that the Commonwealth's opening statement to the jury constituted misconduct because the "prosecutor described her personal feelings to the jury and expressed her personal belief that Appellant had the face of a murderer. This was a statement in which she expressed an improper personal opinion which was not supported by the evidence." Appellant's Brief at 8. Appellant maintains that his appellate counsel provided IAC by failing to raise this prosecutorial misconduct claim on direct appeal. Alternatively, to the extent that the issue was not adequately preserved at trial for purposes of review on direct appeal, Appellant claims that trial counsel provided IAC by failing to preserve it. Appellant further asserts that the merit of the underlying claim of prosecutorial misconduct is supported by our Supreme Court's decision in *Commonwealth v. Capalla*, 185 A. 203 (Pa. 1936).

As an initial matter, we conclude that appellate counsel did not provide IAC in the circumstances of this case. Trial counsel's limited and debatably premature objection did not fully encapsulate the argument Appellant now raises regarding the nature of the prosecutor's purported misconduct during the Commonwealth's opening statement. Thus, the matter was effectively waived for review on direct appeal. As such, counsel cannot be deemed ineffective for failing to raise a claim on direct appeal that had been waived at

trial.  ***See Commonwealth v. Spotz***, 18 A.3d 244, 278 (Pa. 2011)  (holding "[t]here is no merit to [a] claim that appellate counsel was ineffective for failing to raise, on direct appeal, a waived claim of trial court error related to [a] prosecutor's comments").  This is axiomatic because it is "elementary that issues not preserved for appellate review … will not be considered by an appellate court."  ***Commonwealth v. McKenna***, 383 A.2d 174, 179 (Pa. 1978).

Consequently, we turn to consider Appellant's claim that trial counsel provided IAC by not challenging the entirety of the portion of the prosecutor's opening statement that opined on Appellant's appearance as it relates to his culpability.

An IAC claim

> grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process.  To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.  The touchstone is fairness of the trial, not the culpability of the prosecutor.  Finally, not every intemperate or improper remark mandates the granting of a new trial; reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

***Commonwealth v. Koehler***, 36 A.3d 121, 144 (Pa. 2012) (cleaned up).

Thus, in order for Appellant to be entitled to relief, we first consider whether the prosecutor's comments were forbidden due to their impact on a constitutionally or statutorily protected right. Second, if the comments were prohibited, we then consider whether they were so egregious that the "unavoidable effect" was to create in the jurors' minds "a fixed bias and hostility toward" Appellant that undermined the fairness of his trial. *Id.*

The PCRA court determined that the prosecutor's comments were not improper:

> These comments were appropriate since the prosecutor intended to present to the jury a video of [Appellant's] shooting the victim. The jury would be able to view the video for themselves, observe [Appellant]'s demeanor, and draw their own conclusions. Moreover, the prosecutor did not improperly label [Appellant] "a murderer;" the Commonwealth's position at trial was that [Appellant] murdered Irving Vaughn.

PCO at 6. The court further noted that "this comment was based upon evidence the prosecutor planned to introduce at trial…." *Id.* at 7. The Commonwealth also maintains that "nothing in the prosecutor's opening statement rose to the level of prosecutorial misconduct" and that the "prosecutor was commenting on the evidence she intended to present at trial—a video that showed [Appellant] killing the victim." Commonwealth's Brief at 12.

Appellant argues that the prosecutor's comments "involved her own personal opinion of guilt, an inappropriate claim of expertise as to what a murderer's face looks like, and an attempt to stigmatize Appellant and unfairly inflame the passions of the jury against him." Appellant's Brief at 5. Appellant

- 8 -

further claims our Supreme Court's decision in **Capalla** is "directly on point[.]" **Id.** at 8.

In **Capalla**, our Supreme Court held that Capalla was entitled to a new trial when the prosecutor described him as a "cold-blooded killer" before the jury. However, in the intervening years, the law significantly evolved from our Supreme Court's ruling in **Capalla**, culminating with the Hight Court's holding in **Commonwealth v. Clancy**, 192 A.3d 44 (Pa. 2018). In **Clancy**, addressing the same language at-issue in **Capalla**, our Supreme Court held that automatic reversal is not required where the statement of prosecutor under consideration is tethered to the facts of the case and the Commonwealth's burden to prove each element of the charged offenses. The **Clancy** Court explained:

> Consistent with our clear departure from **Capalla**'s rigid standard, and mindful of our concomitant allowance of oratorical flair, we hold that offense-centric statements generally are permissible. These are statements that speak to the elements of the particular charges levelled against the defendant and the evidence necessary to prove those elements at trial, such as those at issue in **Hall**[2] and **Chamberlain**.[3] The prosecutor must be free to argue that the facts of record establish every element of the crime charged, and must be free to respond fairly to the arguments of the defense. Thus, **we should not preclude or condemn a prosecutor's characterizations of the defendant that are both based upon the record and that inherently inform elements of an offense at issue**, especially where the remarks constitute a fair response to defense counsel's argument. However, when statements deteriorate into impermissible

---

[2] **Commonwealth v. Hall**, 701 A.2d 190 (Pa. 1997).

[3] **Commonwealth v. Chamberlain**, 30 A.3d 381 (Pa. 2011).

characterizations and inflammatory name-calling that are divorced from the record or irrelevant to the elements of the crime at issue, they are substantially unwarranted and must be scrutinized for prejudicial effect.

*Clancy*, 192 A.3d at 65 (emphasis added).

Appellant contends that "this was not the arguably fair commentary at issue in *Clancy* but instead [the prosecutor's] own personal opinion that Appellant had the face of a murderer. The prosecutor in *Clancy* did not talk about their own personal feelings and thoughts, making that case distinguishable." Appellant's Brief at 11.

First, we disagree with Appellant's characterization of the record insofar as he suggests that the prosecutor made a broad generalization about Appellant's appearance in relation to his guilt; the prosecutor did not suggest in a vacuum that Appellant's face looked like that of a murder. While directly referencing the video of the killing that would be shown to the jury, the prosecutor invited the jury to consider the expressions on Appellant's face. Appellant's accusation that the prosecutor expressed "her personal belief that Appellant had the face of a murderer[,]" *id.* at 8, is inaccurate as it suggests that the prosecutor had commented impermissibly on Appellant's permanent facial features as suggestive of his guilt, rather than the temporary facial expressions he exhibited in the immediate aftermath of the shooting.

Furthermore, we conclude that Appellant's temporary facial expression at that time is a relevant matter for the jury consideration. As the Commonwealth explains,

because [Appellant] admitted to killing the victim but claimed he acted in justifiable self-defense, his state of mind was the key element at issue. To meet her burden of proof, the prosecutor was well within her rights to argue that [Appellant]'s facial expression in the video showed that he was not acting out of fear for his own safety when he shot the victim.

Commonwealth's Brief at 13.

We agree with the Commonwealth. The prosecutor's statements during her opening argument were not impermissible in the circumstances of this case. The prosecutor's comments on Appellant's facial expressions were directly tethered to video evidence that would be presented to the jury in the Commonwealth's case-in-chief, and also spoke to the core issue to be decided by the jury, which was whether Appellant had acted in self-defense, or with malice,[4] in the killing of Irving Vaughn. "The prosecutor is free to argue that the evidence leads to the conclusion of guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence." *Chamberlain*, 30 A.3d at 408. Appellant's demeanor in the immediate aftermath of the shooting, as evidenced by his facial expressions, could give rise to reasonable inferences regarding whether he acted in self-defense or with malice, although it was undisputed that he killed the victim. Thus, the prosecutor's comments were permissible under *Clancy*. Accordingly, we

_____

[4] "Third[-]degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Kling*, 731 A.2d 145, 147 (Pa. Super. 1999). "Malice exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Id.* at 147–48 (cleaned up).

conclude that Appellant's first IAC claim lacks arguable merit and, therefore, he is not entitled to relief. ***See Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014) (stating the failure "to prove any prong of this test will defeat an ineffectiveness claim[,] and that "counsel cannot be deemed ineffective for failing to raise a meritless claim").

## **II**

In his second claim, Appellant asserts that trial counsel was ineffective for failing to object to portions of the expert testimony by the Commonwealth's trial expert that differed from the conclusions of the author of the autopsy report. As background:

> Dr. Gary Collins performed the autopsy on victim Irving Vaughn and prepared the autopsy report. N.T. Trial, 2/10/15, at 124. Dr. Albert Chu reviewed Dr. Collins' report, photographs of the body, toxicology reports, and the video of the shooting. *Id.* at 124-25, 131. Dr. Chu testified at trial as an expert in forensic pathology since Dr. Collins was unavailable.[3] Dr. Chu testified that he did not agree with Dr. Collins' findings that the bullet traveled from the front to the back of the neck, stating that after his review of the video, which Dr. Collins[] did not have access to, Dr. Chu believed it was more likely that the bullet traveled from back to front. *Id.* at 131. The Commonwealth then wanted to play the video and ask Dr. Chu questions about it. Defense counsel objected to Dr. Chu['s] testifying about the video and requested a side bar conversation, at which time he argued that the Commonwealth was "attempting to add additional testimony to be [*sic*] beyond what is in the report relating to asking this witness about reviewing the video, and, assuming, to elicit some additional opinions that were not provided to the defense in discovery in relation to his review of the video." *Id.* at 146-47. The Commonwealth argued that it wanted to show the video so Dr. Chu could explain why he did not adopt Dr. Collins' report in full and why he disagreed as to the entry and exit direction of the bullet. This [c]ourt ruled that Dr. Chu could testify regarding why his opinion differed from Dr. Collins' based on the video since this

testimony was already on the record and was not objected to when he first said it. However, Dr. Chu could not add to his testimony and opine as to when he believed Irving Vaughn became incapacitated and unable to move after being shot. *Id.* at 152-153.

> [3] At the time of trial, Dr. Collins no longer worked in Philadelphia. He had left his position to begin serving as the Chief Medical Examiner for the State of Delaware. *Id.* at 124.

PCO at 7-8 (citations reformatted).

Appellant contends that his trial counsel was ineffective for failing to initially object to the portion of Dr. Chu's testimony where he disagreed with Dr. Collins' autopsy report as to the trajectory of the bullet that caused the victim's neck wound. Appellant maintains that he was effectively ambushed by critical expert testimony regarding the nature of a mortal wound to the victim, because Dr. Chu's differences of opinion with Dr. Collins were not provided in discovery. He argues that his trial counsel could not have had a reasonable basis for failing to object in a timely fashion to those portions of Dr. Chu's testimony.[5] Appellant also argues that he was prejudiced by

---

[5] Appellant also argues in the alternative that, if trial counsel's objection was sufficient to preserve this claim, that his appellate counsel was ineffective for failing to raise that claim on direct appeal. Here, trial counsel's objection was substantively on point, as he argued at trial that Dr. Chu was offering a new and distinct opinion regarding the nature and timing of the neck wound, effectively contradicting part of Dr. Collins' report. *See* N.T. Trial, 2/10/15, at 150-51. However, the record also demonstrates that the trial court had denied the objection, in part, because Dr. Chu had already testified without objection regarding his new theory about the trajectory of the neck-wound bullet. *Id.* at 151-52. The court sustained Appellant's objection insofar as it related to Dr. Chu's difference of opinion with Dr. Collins' report about the timing of the shots, as trial counsel's objection was timely made in response
*(Footnote Continued Next Page)*

counsel's failure to object because he was not prepared to address the new expert testimony.

> Generally,

> evidentiary rulings are within the general province of the trial courts and will not be overturned by an appellate court absent an abuse of discretion, as, for example, when the law is overridden or misapplied. In terms of the applicable law, expert testimony is generally admissible if: the witness has a specialized knowledge beyond that possessed by the average layperson; such knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and the expert's methodology is generally accepted in the relevant field. **See** Pa.R.E. 702.

***Commonwealth v. Maconeghy***, 171 A.3d 707, 712 (Pa. 2017) (citation omitted).

> In criminal cases,

> Pa.R.Crim.P. 573(D) provides that both parties have a continuing duty to disclose evidence that is requested prior to trial that is subject to disclosure … including any expert information and reports.
>
> > …
>
> Although there are no rules of procedure in criminal cases precisely governing expert reports, it cannot be asserted that either the Commonwealth or a defendant has *carte blanche* to allow an expert to testify beyond the information contained in his or her report. To hold otherwise would eviscerate the requirement that reports be disclosed.

---

to that testimony. Because trial counsel's objection to Dr. Chu's new theory as to the bullet's trajectory was untimely, that issue was waived for purposes of appellate counsel's ability to raise it on direct appeal. Thus, we consider this claim solely with respect to trial counsel's alleged ineffectiveness for failing to issue a timely objection to Dr. Chu's new theory regarding the directionality of the bullet wound to the victim's neck. As with Appellant's first IAC issue, his counsel on direct appeal cannot be deemed ineffective for failing to raise a claim that was waived at trial.

*Commonwealth v. Roles*, 116 A.3d 122, 131–32 (Pa. Super. 2015).

However, even where the Commonwealth violates the rules of discovery by providing expert testimony at trial that exceeds the scope of the disclosed report, a petitioner must still show that he was prejudiced in order to prevail on an IAC claim that counsel was ineffective for failing to object to the discovery violation. *See Commonwealth v. Henry*, 706 A.2d 313, 328 (Pa. 1997); *see also Roles*, 116 A.3d at 133 ("A discovery violation and testimony exceeding the scope of the expert's report … do not automatically command a new trial. [The appellant] still must establish that the introduction of the expert testimony caused him prejudice to the degree that it affected his trial strategy or likely affected the outcome of the proceedings.").

Here, the PCRA court determined that Appellant could not have been prejudiced by counsel's failure to object, even if the other elements of the IAC test were met:

> [Appellant] is unable to prove that he was prejudiced by the admission of Dr. Chu's testimony regarding the trajectory of the bullet. In his amended petition, [Appellant] argues that he was "denied a fair trial when Dr. Chu gave his opinion about the direction the bullet took" because "it permitted the Commonwealth to argue and the jury to infer that [Appellant] shot the victim as the victim was fleeing from him in contravention of [Appellant's] testimony and his defense of self-defense." [Brief in Support of Appellant's Amended PCRA Petition, 2/27/19, at] 14. However, [Appellant] fails to explain how Dr.] Chu's opinion allegedly unraveled his entire theory of the case. During [Appellant]'s own testimony at trial, he stated that he and victim Irving Vaughn were engaged in "tussling" and "vicious fight[ing]" in a small public restroom, with "[a] lot of clothes getting gripped up and bodies slammed back and forth." []N.T. [Trial,] 2/13/15, [at] 58-65[]. [Appellant] testified that when he grabbed the gun

- 15 -

from the victim's waistband and fired, he was not aiming at any "specific place on the body, just the body." [*Id.* at] 66-67[]. Thus, whether the victim was facing toward or away from [Appellant] when he shot has no bearing on [Appellant]'s self-defense argument since [Appellant] testified that he just shot in the direction of Vaughn's body during the struggle. Since [Appellant] is unable to prove that Dr. Chu's testimony prejudiced him, no relief is due.

PCO at 9-10.

We agree with the PCRA court. Initially, we note our general agreement with Appellant that evidence that a victim was shot from behind will often be influential, if not fully determinative, of a jury's assessment of the credibility of a defendant's self-defense claim. Additionally, we agree with Appellant that the failure to disclose to the defense evidence of such a fact in a timely fashion is objectionable, and that a defense attorney's failure to object to such evidence might provide grounds for a new trial in some circumstances.

However, in this case it was undisputed that Appellant and the victim were engaged in a tussle for the firearm when Appellant fired multiple shots at the victim in quick succession. Thus, in the specific circumstances of Appellant's self-defense claim, the fact that one of those shots may have entered from the back of the victim's neck rather than the front was immaterial to Appellant's self-defense claim. Thus, the credibly of Appellant's self-defense claim turned not on the trajectory of any particular bullet (even in small part), but instead on the credibility of Appellant's testimony about how the altercation began off-camera immediately preceding the shooting, as well as other circumstantial evidence not related to the nature of the victim's

bullet wounds. The Commonwealth argued that Appellant drew his firearm first, whereas Appellant testified that the victim drew first, and that he was attempting to disarm the victim when the shots were fired as seen on the video. With these competing narratives, the direction of the bullet through the victim's neck was unlikely to be a determinative factor in the jury's decision.

In his reply brief, Appellant emphasizes that the Commonwealth exploited the admission of Dr. Chu's testimony by arguing to the jury that "the Commonwealth heavily relied on the replacement medical examiner's novel opinion to argue that the decedent had been immediately shot in the back of the neck and collapsed." Appellant's Reply Brief at 5. He further asserts that the prosecutor "specifically argued that the jury should not find Appellant acted in self-defense because the decedent's body provided a version of events which would show that he was only shot in the back." *Id.* at 3.

Appellant's assertions misrepresent the record. In the portion of the Commonwealth's closing argument cited by Appellant in support of this claim, the prosecutor acknowledged that the first shot was a bullet that caused multiple wounds and ultimately lodged in the victim's shoulder. N.T. Trial, 2/17/15, at 69-70 ("That's when [Appellant] fires, and that first shot goes right through Irving's finger, right into his shoulder"). That was not the shot that was the subject of Dr. Chu's disagreement with Dr. Collins. At no point did the prosecutor assert that the victim was *only* shot in the back. The only change in the sequence of events suggested by Dr. Chu's new testimony was

- 17 -

that three shots hit the victim from behind rather than two. In any event, the jury was able to view the video of the shooting and could judge for themselves how the sequence of shots affected the credibility of Appellant's self-defense claim; it was not solely reliant on the expert report as the only source of objective evidence regarding the circumstances of the shooting. We also note that the jury returned a not-guilty verdict on the charge of first-degree murder, suggesting that it had rejected any inference that the shots to the victim's back constituted specific intent to kill the victim, even after the victim was incapacitated by the shot to his neck.

Finally, Appellant asserts that "[h]ad trial counsel known that the medical examiner would have an entirely different conclusion regarding the trajectory of the bullets, he could have potentially retained his own expert, prepared additional cross-examination, addressed the issue in opening statements, or even considered whether to engage in plea negotiations." Appellant's Reply Brief at 5. As discussed above, Dr. Chu's testimony only changed with respect to the trajectory of one bullet. In any event, Appellant provides only speculation as to how he would have benefited from obtaining his own expert. He did not proffer a new expert opinion in the petition, nor did he proffer any expert testimony for an evidentiary hearing. Likewise, Appellant fails to explain how he would have cross-examined Dr. Chu differently, or changed his opening argument, to such an extent that it would give rise to a reasonable probability that the outcome of the trial would be different. Appellant also baldly asserts that Dr. Chu's new testimony would

have affected plea negotiations, but he fails to elaborate on this point. We fail to see how a fact that we do not believe had a significant effect on Appellant's verdict in the circumstances of this case could have nonetheless affected Appellant's decision to pursue a different course of action regarding a plea.

Accordingly, we ascertain no error in the PCRA court's determination that there was no reasonable probability that the jury's verdict would have been different had the trial court sustained an objection by Appellant's trial counsel regarding the portion of Dr. Chu's testimony that differed from Dr. Collins' autopsy report. As Appellant has failed to demonstrate that he was prejudiced by counsel's failure to timely object, his second IAC claim lacks merit. **See Fears**, **supra**.

### III

In his final claim, Appellant asserts that the PCRA court erred by failing to conduct an evidentiary hearing to address his trial counsel's ostensible ineffectiveness, due to counsel's failure to investigate the altering of biographical information (specifically, his self-reported height) by police during their investigation. Appellant contends that his height was misreported intentionally, for the purposes of undermining his self-defense claim by minimizing the size difference between Appellant and the victim. Appellant contends that

> when the police interviewed Appellant shortly after his arrest, he told the interviewing officer that he was 5' 6" tall. Appellant would have testified at an evidentiary hearing that the officer put down

that information on the form. However, the form later showed that someone altered the six into an eight.[6] [Reproduced Record at 394]. Trial counsel failed to investigate the alteration or challenge it at trial despite the fact that Appellant advised counsel of the alteration[,] and despite the fact that the prosecutor argued that because Appellant was only two inches shorter than the 5' 10" tall victim, he did not have the right to use deadly force.

Appellant's Brief at 25.

It is axiomatic that an attorney may be deemed ineffective for failing to adequately investigate in preparation for trial; in such cases, prejudice "can be demonstrated by alleging beneficial information or issues that counsel should have presented had he been prepared adequately, which would have changed the outcome of the trial." *Commonwealth v. Elliott*, 80 A.3d 415, 432 (Pa. 2013).

Here, the PCRA court found that Appellant

is unable to show that he was prejudiced by any failure to investigate this alleged alteration. During his testimony, [Appellant] stated that the biographical information was incorrect, that he was only 5' 6" tall, and therefore [that] Vaughn was 4" taller than him. []N.T. [Trial,] 2/13/15, [at] 125-26[]. [Appellant] testified that "[e]verything else is correct but that" one detail about his height. *Id.* at 126. Thus, the jury was aware that the height differential was either [two inches] based upon the biographical report or [four inches] based upon [Appellant]'s testimony. The jury, who viewed the video of the shooting, could make their own determination regarding the size difference between the victim and [Appellant]. In the end, the jury did not believe [Appellant]'s claim of self-defense and found him guilty of murder. Since [Appellant] is unable to show prejudice due to trial counsel's failure to investigate an alleged alteration to the

_____

[6] On the Biographical Information Report, we note that it appears as if a correction of some sort was made, such that either the "6" was written over with an "8," or vice versa. However, it is not obvious which number was written first.

> biographical report, trial counsel cannot be found ineffective for failing to do so.

PCO at 15.

We agree with the PCRA court. Even assuming Appellant could prove at an evidentiary hearing that he is only 5' 6", and assuming that his trial counsel would have testified at a hearing that he had no reasonable basis for failing to investigate the discrepancy on the biographical information form (or assuming the PCRA court would conclude that counsel's basis for not investigating the issue was unreasonable), Appellant still would have to demonstrate that his counsel would have uncovered evidence that the biographical information had been intentionally altered in order to undermine Appellant's self-defense claim. Appellant fails to explain how he or his counsel could provide evidence that the form had been intentionally altered. Most importantly, Appellant fails to identify what other witnesses or evidence he could have presented at an evidentiary hearing to establish ***intentional*** misconduct of that nature. Appellant did not proffer any other witnesses or evidence in the petition for that purpose. Appellant's underlying claim of intentional misconduct is pure speculation; he has not proven, nor offered a means to prove, that the alleged misconduct occurred, and so Appellant has failed to show that he was prejudiced by counsel's failure to investigate such a speculative claim. ***See Commonwealth v. Lawrence***, 165 A.3d 34, 48 (Pa. Super. 2017) (holding that where an "underlying … allegation is unsupported by any evidence of record and is, instead, based on mere speculation, we deem it, and the ineffectiveness claims premised upon it,

meritless"). Accordingly, we conclude that the PCRA court did not err in denying Appellant's third IAC claim without a hearing.

Order **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2022